AO 106 (Rev. 06/09) Application for a Search Warrant

**FILED**

MAR 03 2020

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

1 Cellphone
Seized as FP&F No. 2020250600030801

Case No. **20MJ0966**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference

located in the   Southern   District of   California  , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 952, 960 and 963, | Importation of a Controlled Substance; Conspiracy to do same |

The application is based on these facts:
See attached Affidavit, incorporated herein by reference

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Sean Lynch, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/30/2020

*Judge's signature*

City and state: San Diego, California

Hon. Barbara L. Major, United States Magistrate Judge
*Printed name and title*

## **AFFIDAVIT**

I, Special Agent Sean Lynch, being duly sworn, hereby state as follows:

## **INTRODUCTION**

1. I submit this affidavit in support of an application for a warrant to search the following electronic device(s):

>1 Cellphone
>
>Seized as FP&F No. 2020250600030801
>
>("Target Device")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Section(s) 952, 960 and 963, as further described in Attachment B.

2. Agents seized the **Target Device** on December 17, 2019, from Michelle CASTILLO ("CASTILLO") at the time she was arrested at the Otay Mesa Port of Entry, San Diego, California for importing approximately 55.26 kilograms (121.57 pounds) of Methamphetamine from Mexico into the United States. *See U.S. v. CASTILLO* Case No. 19-MJ-5617 (S.D. Cal.). The Target Device is currently in the evidence vault located at 880 Front Street, San Diego, CA, 92154.

3. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## **BACKGROUND**

4. I am currently employed as a Special Agent with the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI). I have been employed as a Special Agent since November of 2016 and I am currently assigned to the Marine Task Force in San Diego, California where my duties include maritime related cases of human and drug smuggling via United States

territorial and international waters. As part of my routine duties I regularly respond to the Ports of Entry along the southwest border to process drug smuggling cases. Prior to this, I served in the United States Marine Corps as an Infantry Officer. I become a Special Agent with the United States Secret Service (USSS) and following six years of employment as a USSS Special Agent, I returned to active duty with the United States Marine Corps and retired prior to becoming a Special Agent with HSI. I have conducted multiple complex criminal cases in violation of numerous federal laws to include but not limited to financial, identity theft and counterfeit document cases while employed as a Special Agent with the USSS.

5. I have received training on investigations involving drug smuggling while attending the Criminal Investigator Training Program at the Federal Law Enforcement Training Center two times, the USSS Special Agent Training Academy, and the HSI Special Agent Training Academy.

6. I received a Bachelor's Degree from St. John's University and have completed a Master's level program at the Marine Corps University Command and Staff College in Quantico, Virginia. I am also a graduate of the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia, where I completed approximately 20 weeks of intensive training in criminal investigations. Since my graduation from FLETC, I have conducted and participated in dozens of investigations related to the trafficking of controlled substances. My experience includes, among other things, debriefing individuals who have been apprehended for the importation of controlled substances, executing search warrants, arresting and interviewing subjects, and conducting and utilizing physical and electronic surveillance.

7. Through my training, experience, and conversations with other members of law enforcement, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry. I am aware that it is common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones. Because

they are mobile, the use of cellular telephones permits narcotics traffickers to easily carry out various tasks related to their trafficking activities, including, *e.g.*, remotely monitoring the progress of their contraband while it is in transit, providing instructions to drug couriers, warning accomplices about law enforcement activity, and communicating with co-conspirators who are transporting narcotics and/or proceeds from narcotics sales.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in narcotics trafficking investigations, I am aware that individuals engaged in drug trafficking commonly store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in drug trafficking, as well as images and videos of drugs or contraband, proceeds and assets from drug trafficking, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

 a. tending to indicate efforts to import methamphetamine, or some other federally controlled substance, from Mexico into the United States;

 b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

    d.    tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the Target Device; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10. On December 17th, 2019, at approximately 11:55 PM, Michelle CASTILLO applied for entry into the United States from Mexico through the Otay Mesa, California Port of Entry. CASTILLO was the driver of a 2019 gray Nissan Sentra bearing California license plate 8JBV603. Customs and Border Protection Officers discovered approximately 55.26 kilograms (121.57 pounds) of methamphetamines concealed in the rear quarter panels, doors, gas tank, dash and center console area of the vehicle. Officers placed CASTILLO under arrest and seized the Target Device from her possession at the time she was arrested.

11. After being advised of her *Miranda* rights, CASTILLO stated that she understood her rights and waived them orally and in writing.

12. During the interview, CASTILLO stated that she is the current owner of the Nissan Sentra and the sole driver of the vehicle. CASTILLO initially stated that she had been staying in a hotel in Mexico for a few days and allowed a mechanic to do some work on the vehicle without providing any details as to the location of the mechanic or contact information.

13. CASTILLO then confessed to knowingly transporting the drugs across the border in exchange for $4,000 US Dollars. CASTILLO stated she was going to park the car on the street in Chula Vista and was not involved any further in the drug

transfer. CASTILLO elected to not provide any further details regarding others involved in this drug smuggling event.

14. CASTILLO acknowledged that the **Target Device** was hers and she provided written consent for her cell phone to be searched.

15. In light of the above facts, CASTILLO's statements, and my own experience and training, there is probable cause to believe CASTILLO was using the **Target Device** to communicate with others to further the importation of illicit narcotics into the United States. Accordingly, I request permission to search the Target Device for data beginning on November 17, 2019 through December 17, 2019, the date of CASTILLO's arrest.

16. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect

the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

17. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

18. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

19. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

**CONCLUSION**

20. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Device** will yield evidence of CASTILLO's violations of Title 21, United States Code, Sections 952, 960 and 963.

21. Because the **Target Device** was seized at the time of CASTILLO's arrest and has been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Device**. As stated above, I believe that the appropriate date range for this search is from November 17, 2019 through December 17, 2019.

22. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item(s) described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

1  I swear the foregoing is true and correct to the best of my knowledge and belief.

*[signature]*

Special Agent Sean Lynch
Homeland Security Investigations

Subscribed and sworn to before me this __30__ day of January, 2020.

*[signature]*

Hon. BARBARA L. MAJOR
United States Magistrate Judge

7

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

    1 Cellphone
    Seized as FP&F No. 2020250600030801
    (the "Target Device")

The Target Device is currently in the evidence vault located at 880 Front Street, San Diego, CA, 92154.

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of November 17, 2019 through December 17, 2019:

a. tending to indicate efforts to import methamphetamine, or some other federally controlled substance, from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.